UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FRANK ANTONIO CAMERON,

      Petitioner,

v.                                                                                    Case No. 3:23-cv-240-MMH-SJH

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

      Respondent.

---

## ORDER

### I. Status

Petitioner Frank Antonio Cameron, an inmate of the Florida penal system, initiated this action on September 12, 2022,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1) in the Northern District of Florida.[2] The Honorable Hope T. Cannon, United States Magistrate Judge, ordered the petition to be transferred to the Middle District of Florida. See Doc. 5. On May 16, 2023, this Court granted Cameron's request for leave to amend his Petition. See Docs. 11; 12. Cameron now proceeds on an Amended Petition (Doc. 15; Amended Petition). In the Amended Petition, he challenges two 2019

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

state court (Duval County, Florida) judgments of conviction for second degree murder and possession of a firearm by a convicted felon. He raises six grounds for relief. See Amended Petition at 5–21. Respondent submitted a memorandum in opposition to the Petition, see Response (Doc. 20; Response), and also submitted exhibits, see Docs. 20-1 through 20-18. Cameron filed a brief in reply. See Reply to Response (Doc. 21; Reply). This action is ripe for review.

## II. Relevant Procedural History

On February 28, 2018, the State of Florida charged Cameron by amended information in State v. Cameron, No. 2016-CF-1114 (Fla. 4th Cir. Ct.), with murder in the second degree (Count One) and possession of a firearm by a convicted felon (Count Two). Doc. 20-2. Cameron proceeded to trial, and a jury found Cameron guilty as charged in both counts on December 7, 2018. Doc. 20-7. On February 1, 2019, the trial court sentenced Cameron to a thirty-year term of imprisonment with a twenty-five-year mandatory minimum as to Count One and a concurrent, fifteen-year term of imprisonment with a three-year mandatory minimum as to Count Two. Doc. 20-8.

On direct appeal, with the benefit of counsel, Cameron filed an initial brief, arguing: (1) the evidence was insufficient as to the second degree murder charge; (2) the trial court erred in denying the suppression of Cameron's "involuntary" incriminating statements; and (3) Cameron's trial was

2

prejudiced after the testimony of a key State witness. Doc. 20-9 at 14–34. The State filed an answer brief, Doc. 20-10, and Cameron replied, Doc. 20-11. The First District Court of Appeal (First DCA) per curiam affirmed Cameron's convictions and sentences without a written opinion on March 27, 2020, and issued the mandate on April 17, 2020. Doc. 20-12 at 1–3. Cameron filed a motion for rehearing and/or clarification on April 20, 2020, and the First DCA denied the motion on May 21, 2020. Id. at 4.

On July 9, 2021, Cameron filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Doc. 20-13. He then filed an amended 3.850 Motion, alleging: (1) trial counsel rendered ineffective assistance of counsel by failing to object to comments made by the prosecutor during closing argument advising Cameron not to testify at trial; (2) the State's improper comments rose to the level of fundamental error; (3) trial counsel was ineffective for advising Cameron against testifying; (4) trial counsel was ineffective for failing to properly cross-examine the medical examiner; (5) trial counsel was ineffective for failing to strike a juror who knew a family member of the victim; (6) trial counsel was ineffective for failing to move for mistrial based on outburst from victim's family; and (7) the cumulative effect of counsel's errors deprived Cameron of his right to a fair trial (Rule 3.850 Motion; Doc. 20-14 at 4–21). On September 23, 2021, the postconviction court summarily denied Cameron's Rule 3.850 Motion. Doc. 20-15. The First DCA

3

per curiam affirmed the postconviction court's denial without a written opinion on June 14, 2022, Doc. 20-18 at 1–2, and issued the mandate on July 28, 2022, id. at 3.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318–19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Cameron's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles
### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), abrogation recognized on other grounds by Smith v. Comm'r, Ala. Dep't of Corr., 67 F.4th 1335, 1348 (11th Cir. 2023). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "greatly circumscribed and highly deferential." Id. (internal quotation marks omitted) (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

5

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 584 U.S. 122, 125 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 125–26, 132.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97–98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster,

563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Titlow, 571 U.S. at 19. "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102–03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365–366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including

9

> constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[3] supra, at 747–748, 111 S. Ct. 2546; Sykes,[4] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9–10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992)

---

[3] Coleman v. Thompson, 501 U.S. 722 (1991).
[4] Wainwright v. Sykes, 433 U.S. 72 (1977).

(quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id</u>. at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir.

---

[5] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

11

2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (first citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003); and then <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for

12

> counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland. See Tuomi v. Sec'y, Fla. Dep't of Corr., 980 F.3d 787, 795 (11th Cir. 2020); Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009). The Eleventh Circuit has instructed:

> In assessing an appellate attorney's performance, we are mindful that "the Sixth Amendment does not

13

> require appellate advocates to raise every non-frivolous issue." Id. at 1130–31.[6] Rather, an effective attorney will weed out weaker arguments, even though they may have merit. See id. at 1131. In order to establish prejudice, we must first review the merits of the omitted claim. See id. at 1132. Counsel's performance will be deemed prejudicial if we find that "the neglected claim would have a reasonable probability of success on appeal." Id.

Philmore, 575 F.3d at 1264–65.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at ---, 131 S. Ct. at 788.

---

[6] Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991).

14

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference—this one to a state court's decision—when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law
### A. Ground One

Cameron alleges the trial judge erred and violated Cameron's due process rights by denying Cameron's motion for judgment of acquittal. Amended Petition at 5–7. Specifically, Cameron states the motion should have been granted as to second degree murder because there was no "competent" evidence of "ill will, hatred, malice, or evil intent" as required to find him guilty of that crime. Id. at 6.

Respondent asserts Cameron failed to exhaust the federal nature of this claim. Response at 30–33. Alternatively, Respondent contends the claim lacks merit. Id. at 33–35. In his Reply, Cameron does not address Respondent's arguments, stating that he "submits [this claim] on the argument and

15

authority presented in his petition, as a reply to the respondent's response . . . would only be repetitive." Reply at 1.

To properly exhaust a claim, a petitioner must "fairly present" his or her federal claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right. Duncan, 513 U.S. at 365-66; Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998). "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 5–6 (1982). The United States Supreme Court has stated, "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. 27, 32 (2004). In reference to this language, the Eleventh Circuit explained:

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement [:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d [1179,] 1184 [(M.D. Ala. 2004)] (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S.Ct. 617, 620, 88

16

> L.Ed.2d 598 (1986)). This is consistent with settled law established by the Supreme Court. See Picard, 404 U.S. at 275, 92 S.Ct. at 512 []. We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state record.'" Kelley [v. Sec'y, Dept. of Corr.], 377 F.3d [1317,] 1345 [11th Cir. 2004] (quoting Martens v. Shannon, 836 F.2d 715, 717 (1st Cir. 1988)).

McNair v. Campbell, 416 F.3d 1291, 1302–03 (11th Cir. 2005).

Cameron, through the assistance of counsel, raised a substantially similar claim on direct appeal. Doc. 20-9 at 14–19. The First DCA per curiam affirmed his convictions and sentences without a written opinion. Doc. 20-12. However, in arguing that there was insufficient evidence of second degree murder, Cameron relied on Florida statutes and Florida case law without a single mention of any constitutional doctrine or citation to a single federal case. He thus failed to present the federal nature of the claim to the state court. Accordingly, Ground One is unexhausted and procedurally defaulted, and Cameron has failed to show cause for or prejudice to overcome this procedural bar.

Even if the federal nature of this claim had been exhausted, it still fails. To the extent that the First DCA decided this claim on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this

17

claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Cameron is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of this claim is not entitled to deference, the claim fails on the merits. When reviewing an insufficiency of the evidence claim in a habeas petition, a federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The court must assume that the jury resolved any evidentiary conflicts in favor of the prosecution, and the court must defer to that resolution. Id.

The Eleventh Circuit has explained:

> In reviewing a challenge to the sufficiency of the evidence this court must take the evidence in the light most favorable to the government. Hamling v. United States, 418 U.S. 87 (1974). Credibility choices and the weighing of evidence must be resolved in favor of the jury's verdict. Glasser v. United States, 315 U.S. 60 (1942). In short, as long as a reasonable juror could conclude that the evidence, viewed with all reasonable inferences drawn in favor of the government, established the defendant's guilt beyond a reasonable doubt, then the conviction will withstand a sufficiency

18

> challenge. It is not necessary, however, that every hypothesis of innocence be disproven as the jury "is free to choose among reasonable constructions of the evidence." United States v. Vera, 701 F.2d 1349, 1357 (11th Cir. 1983) (quoting United States v. Bell, 678 F.2d 547, 549 (5th Cir., Unit B 1982) (en banc) (discussing history of sufficiency of the evidence standard in the Fifth Circuit), aff'd, 462 U.S. 356 (1983) . . . .

U.S. v. Funt, 896 F.2d 1288, 1291–92 (11th Cir. 1990) (citations cleaned up). Thus, "a petitioner is entitled to relief under the Due Process Clause only if no rational trier of fact could have found proof of his guilt beyond a reasonable doubt." Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 460–61 (11th Cir. 2015) (quotation marks omitted).

Under Florida law, second degree murder is defined as "[t]he unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual". § 782.04(2), Fla. Stat. (2016).

> An act is "inherently dangerous and evincing a depraved mind regardless of human life," if it is an act or series of acts that:
>
> 1. a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, and
>
> 2. is done from ill will, hatred, spite, or an evil intent, and

19

3. is of such a nature that the act itself indicates an indifference to human life.

Fla. Std. Jury Instr. (Crim) 7.4 (2018).

At trial, a detective testified that Cameron admitted he had the gun "for protection" and that the victim came over to help Cameron locate the gun's safety. Doc. 20-5 at 123, 124. The detective testified Cameron stated that the gun was being passed back and forth between Cameron and the victim, but that when Cameron took the gun back from the victim, the gun discharged. Doc. 20-5 at 123–24. According to the detective, Cameron also made statements saying things like, "I'm sorry I shot you." Id. at 123. The State presented testimony from the victim's father that Cameron threatened to kill the victim two days prior to the incident after a disagreement. Id. at 161–63, 166–67. The victim's father also testified Cameron had possessed the gun used at least a year before the shooting, which discredits Cameron's assertion that he needed the victim to help him locate the safety on the gun. Id. at 189–91. There was also evidence that bullets were found in Cameron's trashcan close to where the shooting occurred, which the trial court noted could be construed as consciousness of guilt when denying Cameron's motion for judgment of acquittal. Id. at 78, 135, 293–94. The State also presented evidence that the firearm in question was designed to discharge only with a full trigger pull and that it would not fire simply by dropping it or even pulling the trigger half-

20

way. Id. at 244, 245–48. The medical examiner further testified that it appeared the shot came from one to two feet away from the victim. Id. at 279–80. This evidence was entirely sufficient for a rational trier of fact to conclude that Cameron had acted with "ill will, hatred, spite, or an evil intent." Accordingly, Cameron is not entitled to federal habeas relief on Ground One.

## B. Ground Two

Cameron alleges the trial court violated his due process rights to a fair trial by denying his motion to suppress prejudicial, pre-Miranda[7] statements. Amended Petition at 8–9. In support, Cameron explains that officers arrived on the scene and asked, "who shot [the victim]?" and "what happened?" to seek incriminating responses and then placed him into a patrol car. Id. at 8. Cameron states he then told the officer that "it was an accident and that he never meant to shoot his friend." Id.

In the Response, Respondent contends the federal nature of this claim is also unexhausted, and alternatively the claim is without merit. Response at 35–40. Cameron fails to address the issue of exhaustion in his Reply, instead focusing only on the merits. Reply at 1–2.

Cameron raised a substantially similar claim on direct appeal. Doc. 20-9 at 20–28. The First DCA per curiam affirmed his convictions and sentences

---

[7] Miranda v. Arizona, 384 U.S. 436 (1966).

without a written opinion. Doc. 20-12. However, in arguing the trial court erred in denying his motion to suppress, Cameron never argued that the trial court's ruling denied him his rights under the due process clause of the Fourteenth Amendment. Cameron specifically cited violations of Cameron's right against self-incrimination under the Fifth Amendment, right to counsel under the Sixth and Fourteenth Amendment, and right to be free from unreasonable seizures by law enforcement under the Fourth Amendment, see id. at 21, but never once mentioned his right to a fair trial under the Due Process Clause. Moreover, none of the federal cases cited by Cameron address the right to a fair trial under the Due Process Clause. Accordingly, Ground Two is unexhausted and procedurally defaulted. See Duncan v. Henry, 513 U.S. 364, 365 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."). Further, Cameron has failed to show cause for, or prejudice, to overcome this procedural bar.

Nevertheless, assuming arguendo that the federal nature of the claim was exhausted, Cameron's claim still does not warrant relief. To the extent that the First DCA decided this claim on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law,

22

the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Cameron is not entitled to relief on the basis of this claim.

Even if the appellate court's adjudication of this claim is not entitled to deference, the claim is still meritless. Trial counsel filed a motion to suppress Cameron's statements prior to trial, and the trial court held a hearing on the motion. See Doc. 20-4. At the hearing, Officer Cochran and Detective Gray of the Jacksonville Sheriff's Office testified. See generally id. Officer Cochran testified that he was dispatched in reference to a person being shot and, when he arrived at the location, he found Cameron performing cardiopulmonary resuscitation (CPR) on the victim who was laying on the ground bleeding. Id. at 6, 8–9. Officer Cochran told Cameron to "get back" so that another officer could perform CPR. Id. at 11–12. At that time, Officer Cochran asked Cameron who shot the victim, to which Cameron replied that Cameron had shot the victim by accident. Id. at 12. Officer Cochran then asked Cameron "what happened," and Cameron informed him the victim was trying to find the safety on the gun, and when he could not find it, he handed the gun to Cameron at which time Cameron "accidentally" shot the gun. Id. at 13. Cameron was then

23

escorted, without handcuffs, to the back of another officer's patrol car. Id. at 13–14, 31–32.

Detective Gray testified that he responded to the shooting as a homicide detective. Id. at 35. Detective Gray approached Cameron in the back of the patrol car to get Cameron's consent to search the residence. Id. at 37–38. While he was explaining the form to Cameron, without Detective Gray asking any questions, Cameron told him that the victim came over to his house to look at the gun which Cameron had received from a friend for protection. Id. at 39–40. Notably, both Officer Cochran and Detective Gray confirmed that Cameron would not have been able to physically leave the patrol car once inside because there are no handles on the inside of the backdoors. Id. at 32, 43.

The right to Miranda warnings only attaches when a custodial interrogation begins. United States v. Acosta, 363 F.3d 1141, 1148 (11th Cir. 2004). "An interviewee's 'status as a suspect, and the coercive environment that exists in virtually every interview by a police officer of a crime suspect,' does not automatically create a custodial situation." United States v. Matcovich, 522 F. App'x 850, 851 (11th Cir. 2013)[8] (citing United States v.

_____

[8] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. Gov't Emps. Ins. Co., 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished

24

Muegge, 225 F.3d 1267, 1270 (11th Cir. 2000)). Rather, a "defendant is in custody for the purposes of Miranda when there has been a 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" United States v. Brown, 441 F.3d 1330, 1347 (11th Cir. 2006) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983)). Whether a defendant is in custody "depends on whether under the totality of the circumstances, a reasonable man in his position would feel a restraint on his freedom of movement to such extent that he would not feel free to leave." United States v. McDowell, 250 F.3d 1354, 1362 (11th Cir. 2001) (quotation marks and alterations omitted). A reasonable man for purposes of this determination "is defined [a]s a reasonable innocent person." United States v. Moya, 74 F.3d 1117, 1119 (11th Cir. 1996) (citing Florida v. Bostick, 501 U.S. 429, 437–38 (1991)). "The test is objective: the actual, subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant." Moya, 74 F.3d at 1119. The term "interrogation" under Miranda refers to express questioning as well "words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 300

opinions are not considered binding precedent, but they may be cited as persuasive authority.").

25

(1980). Accordingly, "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by [the Miranda decision]." Miranda, 384 U.S. at 478.

As to the statements made to Officer Cochran, Miranda warnings were not required because at the time of his questions Cameron was not "in custody." A reasonable innocent person would not believe he was barred from leaving when an officer arriving to a medical emergency asked him to "back up" so that a professional could administer CPR and would expect the responding officer to ask basic questions regarding what occurred to respond accordingly to that emergency.

As to Detective Gray's request to search, the request was not one that he should have known would elicit an incriminating response and thus, would not implicate Miranda. See Thompson v. United States, 826 F. App'x 721, 726–27 (11th Cir. 2020) (finding counsel did not act deficiently for failing to move to suppress statements made after a request to search because "Miranda warnings were not required prior to the agents seeking consent to search . . . . This court has previously noted that consent to search is not a self-incriminating statement.") (citing United States v. Hidalgo, 7 F.3d 1566, 1568 (11th Cir. 1993)); see also Everett v. State, 893 So. 2d 1278, 1287–88 (Fla. 2004). Thus, even assuming Cameron was in custody for purposes of Miranda, Cameron's voluntary statements to Detective Gray, who was merely

26

requesting consent to search, do not implicate <u>Miranda</u>. Accordingly, Cameron is not entitled to federal habeas relief on Ground Two.

### C. Ground Three

Cameron alleges the trial court erred when it denied his motion for mistrial. Amended Petition at 10–11. Cameron argues he was entitled to a mistrial after the victim's father testified at trial that Cameron was "known to carry guns" and that "it's the truth." <u>Id.</u> According to Cameron, while it was not "improper" for the witness to testify that Cameron was known to carry guns, the witness was not permitted to make a "self-bolstering" statement. <u>Id.</u> at 10. As a result of the statements and the trial court's denial of the motion for mistrial, Cameron argues he was deprived his rights to a fair trial and due process of law under the Fifth, Sixth, and Fourteenth Amendments. <u>Id.</u> at 11.

Respondent again asserts that Cameron failed to exhaust the federal nature of this claim. Response at 41. Cameron did not respond to this argument. <u>See</u> Reply at 1. With the assistance of counsel, Cameron raised a substantially similar claim on direct appeal. Doc. 20-9 at 29–34. The First DCA per curiam affirmed his conviction without a written opinion. Doc. 20-12. While in his Initial Brief on Appeal Cameron did argue he did not receive a fair trial due to the admission of that evidence and the trial court's denial of counsel's motion for mistrial, this is insufficient to exhaust the federal nature of his claim. Doc. 20-9 at 29, 31, 34. As previously noted, Cameron must do more than

27

"scatter some makeshift needles in the haystack of the state record." <u>Kelley</u>, 377 F.3d at 1345. Cameron again failed to cite a single constitutional provision, federal law, or federal case when making his argument in the state court. Thus, the claim is not exhausted. Moreover, Cameron has failed to show cause for, or prejudice, to overcome this procedural bar.

Assuming his claim was exhausted by his reference to the denial of a fair trial, Cameron still would not be entitled to relief. Insofar as the First DCA decided this claim on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts considering the evidence presented in the state court proceedings. Therefore, Cameron is not entitled to relief on the basis of this claim.

Even if the appellate court's adjudication of this claim is not entitled to deference, the claim is without merit. Under Florida law, a motion for mistrial "should only be granted when an error is so prejudicial as to vitiate the entire trial." <u>Pagan v. State</u>, 830 So. 2d 792, 814 (Fla. 2002). "'It has been long established and continuously adhered to that the power to declare a mistrial

28

and discharge the jury should be exercised with great care and caution and should be done only in cases of absolute necessity.'" Id. (quoting Thomas v. State, 748 So. 2d 970, 980 (Fla. 1999)). Further, federal courts cannot grant habeas corpus relief based on an evidentiary ruling unless the ruling affected the fundamental fairness of the trial. Sims v. Singletary, 155 F.3d 1297, 1312 (11th Cir. 1998) (denying habeas corpus relief on a claim that a motion for mistrial was wrongfully decided).

Here, the victim's father testified that he took Cameron's threat to his son seriously because he was "from the streets and when you threaten somebody, especially somebody that's known to carry guns . . . . " and "it's the truth." Doc. 20-5 at 168. As a preliminary matter, the Court notes that the first comment is ambiguous about whom the witness was saying was known to carry guns. Nevertheless, even assuming it was generally understood that the witness was referring to Cameron, the comments that Cameron was "known to carry guns" and that it was the "truth" were not prejudicial enough to vitiate the entire trial. Importantly, the comments were not a focus of the prosecution, and the trial court offered a curative instruction, which defense counsel declined. Doc. 20-5 at 170–71. Moreover, the comments were of little import considering the evidence as described in Ground One, particularly since it was undisputed Cameron possessed the firearm that day, possibly had it up to a

29

year prior, and was the individual who discharged it. Accordingly, Cameron is not entitled to federal habeas relief on Ground Three.

## D. Ground Four

Cameron asserts trial counsel was ineffective for failing to object to the prosecutor's improper closing statements. Amended Petition at 12–14. Cameron raised this issue in Ground One of his Rule 3.850 Motion. Doc. 20-14 at 4–8. The postconviction court denied relief on the claim, stating:

> In Ground One of this motion, Defendant argues Defense Counsel should have objected to various portions of the State's closing argument.
>
> The purpose of closing argument is to review the evidence adduced at trial and to illuminate the reasonable inferences the jury may draw from that evidence. Bertolotti v. State, 476 So. 2d 130, 134 (Fla. 1985). Lawyers are afforded wide latitude during closing argument. Breedlove v. State, 413 So. 2d 1, 8 (Fla. 1982). Counsel may "argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence." Miller v. State, 926 So. 2d 1243, 1254-55 (Fla. 2006).
>
> The Court finds nothing improper about the State's closing and rebuttal arguments. The arguments fall comfortably within the wide latitude that the law affords to counsel during closing argument. Defense Counsel had no good faith legal basis to raise any additional objections and was not ineffective for failing to do so. See Hitchcock v. State, 991 So. 2d 337, 361 (Fla. 2008) ("Counsel cannot be deemed ineffective for failing to make a meritless objection."). Moreover, there is no reasonable probability that the result of Defendant's trial turned on the State's closing argument or on Defense

> Counsel's failure to object to any statements therein.
> For these reasons, the Court denies Ground One of Defendant's Motion.

Doc. 20-15 at 4–5 (internal record citations omitted). The First DCA per curiam affirmed the postconviction court's denial without a written opinion. Doc. 20-18.

Again, Respondent asserts Cameron failed to exhaust the federal nature of this claim by failing to "cite or allude to his Sixth Amendment right to counsel or cite any case law whatsoever." Response at 44–45. Nevertheless, Respondent acknowledges that the Court could reach the merits of this claim under Martinez v. Ryan, 566 U.S. 1 (2012). While Cameron did not cite the case by name or citation, he does refer to the Strickland standard for ineffective assistance of counsel claims. Those claims inherently implicate a defendant's right to counsel under the Sixth Amendment. See generally Strickland, 466 U.S. 668. Thus, the Court declines to find this claim unexhausted.

To the extent the state appellate court adjudicated this claim on the merits, the state court's decision is entitled to deference. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court

31

proceedings. Accordingly, Cameron is not entitled to relief on the basis of this claim.

Further, even absent deference to the First DCA's adjudication, Cameron's claim is meritless. Cameron first argues counsel should have objected when the prosecutor said that Cameron had left out four words, "once upon a time," when Cameron told the detective that the victim came over to help find the safety and that the gun went off as they were passing it back and forth. Doc. 20-6 at 72. But this argument was not improper. The prosecutor's statement was meant to illustrate how farfetched Cameron's version of the shooting was in light of the evidence including the testimony that Cameron had recently threatened the victim, that the type of gun used does not have an external safety, that Cameron had had the weapon for a significant time prior to the incident, and that the shot to the victim came from one to two feet away from the victim. See id. at 76–78. The Court finds the prosecutor's statement was not improper, it was a reasonable inference that jurors could draw from the evidence. See United States v. Adams, 339 F. App'x 883, 886 (11th Cir. 2008) ("[A] prosecutor may 'assist the jury in analyzing, evaluating, and applying the evidence' and, therefore, may 'urge[] the jury to draw inferences and conclusions from the evidence produced at trial.'") (quoting United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984)). Trial counsel, therefore, was not deficient for failing to make an objection that was without merit. See Denson

32

v. United States, 804 F. 3d 1339, 1342 (11th Cir. 2015) ("Failing to make a meritless objection does not constitute deficient performance.") (citing Freeman v. Att'y Gen., 536 F.3d 1225, 1233 (11th Cir. 2008)).

Cameron also contends trial counsel should have objected to the prosecutor's assertion that Cameron did not perform CPR on the victim immediately after the shooting. Doc. 20-6 at 72–73. But, the prosecutor based this argument off the evidence in the record that the victim likely died immediately and that bullets from the gun had been deposited into a nearby trashcan prior to police arrival. Id. at 73. Accordingly, the Court again finds the prosecutor's comment was to urge the jury to draw an inference from the evidence, and that counsel cannot be deemed deficient for failing to object to such an argument. See Adams, 339 F. App'x at 886; Denson, 804 F.3d at 1342.

Lastly, Cameron contends trial counsel should have objected to the prosecutor's "improper bolstering" of the credibility of the victim's father. Specifically, Cameron states it was improper for the prosecutor to say the victim's father could have testified to facts more favorable to the State. Doc. 20-6 at 76–77. The Court does not find this statement qualifies as improper bolstering. See United States v. Lopez, 590 F.3d 1238, 1256 (11th Cir. 2009) ("A prosecutor's remarks are improper if they attempt to bolster the credibility of a witness based on the government's reputation or through alluding to evidence not admitted at trial."). Accordingly, trial counsel was not deficient

33

for failing to object. See Denson, 804 F.3d at 1342. Moreover, the Court does not find the outcome of the proceeding would have been different if counsel had objected to any of these statements. Cameron is thus not entitled to federal habeas relief on this claim.[9]

### E. Ground Five

Cameron contends trial counsel was ineffective for advising him against testifying. Amended Petition at 15–17. Cameron states trial counsel misadvised him that if testified, the State would be able to elicit testimony regarding the nature and details of his prior convictions. Id. at 15. Cameron argues this was not only a misstatement of the law because the State would only have been able to elicit if, and how many times, he had previously been convicted but also flawed because the prejudice of such testimony was lessened by the parties' stipulation that Cameron was a convicted felon. Id. at 15–16. Cameron asserts that had he been appropriately advised, he would have testified regarding his long friendship with the victim and explained his

---

[9] The Court notes Cameron discussed other prosecutorial comments he believes were improper. However, the Court does not address those comments as Cameron admits trial counsel did object to the comments and does not argue counsel was ineffective in handling those comments. Additionally, while Cameron referenced the comments in Ground Two of his Rule 3.850 Motion, see Doc. 20-14 at 8–10, in that claim he was alleging "fundamental error," not ineffective assistance of counsel, and the trial court denied the claim based on procedural grounds, see Doc. 20-15 at 5–6. Thus, the same issue is not raised here and, to the extent Cameron may wish to raise the issue of ineffective assistance of counsel as to those comments now, the claim would be unexhausted and procedurally defaulted.

argument with the victim as well as the accidental discharge of the weapon. Id. at 16–17.

Cameron raised a substantially similar issue in Ground Three of his Rule 3.850 Motion. Doc. 20-14 at 11–15. The Court notes that while the allegations in his Amended Petition clearly assert counsel advised him that if he testified, the State would be able to elicit details regarding his prior criminal history, in his Rule 3.850 Motion, Cameron was less clear about whether he alleged counsel advised him that his felony record would be elicited and was prejudicial enough to advise against testifying, or if counsel had advised that the details of his prior convictions would also be elicited.[10] Id. at 11–12. The postconviction court denied the claim as follows:

> In Ground Three, Defendant argues Defense Counsel was ineffective because she encouraged Defendant not to testify at trial.
>
> The trial court conducted an extensive sworn colloquy with Defendant. In pertinent part that colloquy reads:
>
> THE COURT: Mr. Cameron, the decision has been relayed to me or it has been relayed to me that the decision has been made by you not to testify in this case. Is that true, sir?
>
> THE DEFENDANT: Yes, Your Honor.

---

[10] The Eleventh Circuit has indicated that "habeas petitioners are permitted to clarify the arguments presented to the state courts on federal collateral review provided that those arguments remain unchanged in substance." Kelley, 377 F.3d at 1344.

THE COURT: And is that your decision?

THE DEFENDANT:  Yes, sir.

THE COURT: Okay. You understand you have the right to testify if you want?

THE DEFENDANT:  Yes, sir.

THE COURT: And you have the right to decline to testify under the Constitution and nobody can force you to do that. You understand?

THE DEFENDANT:  Yes, sir.

THE COURT: Now have you had a chance to talk about the advantages and disadvantages of testifying on your own behalf –

THE DEFENDANT:  Yes, sir.

THE COURT: -- with you[r] client -- with your attorneys?

THE DEFENDANT:  Yes, Your Honor.

THE COURT: And have they answered all your questions on that issue to your satisfaction?

THE DEFENDANT:  Yes, Your Honor.

THE COURT: And do you need any further time to talk about that issue with your attorneys?

THE DEFENDANT:  No, Your Honor.

THE COURT: You've had an adequate amount of time to talk about testifying with the attorneys?

THE DEFENDANT:  Yes, sir.

THE COURT: And do you believe it is in your best interest not to testify in this case?

THE DEFENDANT:  I trust my attorneys at this point, Your Honor, and I'll continue to do so.

THE COURT: Okay. But you understand that it is your decision and yours alone?

THE DEFENDANT:  Yes, sir.

THE COURT: We talked about that yesterday, too.

THE DEFENDANT: Yes, sir, it is my decision.

THE COURT: While you trust your attorneys, ultimately you have to make that decision.

THE DEFENDANT:  Yes, sir. I made that decision.

THE COURT: And taking everything into consideration, do you believe it's in your best interest not to testify?

THE DEFENDANT:  Yes, Your Honor.

THE COURT: Okay. And has anyone told you that you will get a more favorable outcome if you do not testify? In other words, has anyone told you that you will get a more favorable outcome in this case --

THE DEFENDANT:  No. No, Your Honor.

THE COURT: -- if you do not take the stand?

THE DEFENDANT:  No, Your Honor.

THE COURT: Have -- have your -- have either of your attorneys guaranteed you a more favorable outcome if you do not take the stand?

THE DEFENDANT:  No, Your Honor. They haven't guaranteed me that, Your Honor.

THE COURT: Okay. You understand it's -- it's a -- it's a strategic decision --

THE DEFENDANT:  Yes, sir.

THE COURT: -- that you make with the best information that you have, but in the end, no one can guarantee you a more favorable outcome? You understand that?

THE DEFENDANT:  Yes, sir.

THE COURT: Has anyone threatened you, forced you, or coerced you in any way to not testify?

THE DEFENDANT:  No, Your Honor.

THE COURT: Okay. Obviously, you didn't take any medication this morning?

THE DEFENDANT:  I'm only medicated at nights, Your Honor.

THE COURT: This is a prescribed medication?

THE DEFENDANT:  Yes, Your Honor.

THE COURT: You're not under the influence of any alcoholic beverage or drug right now?

THE DEFENDANT:  No, Your Honor.

38

(. . .)

THE COURT: Okay. So outside of that there's no other witnesses that you feel should be testifying?

THE DEFENDANT:  No, Your Honor.

THE COURT: I'm sorry?

THE DEFENDANT:  No, Your Honor.

THE COURT: And you've been able to adequately discuss who should and shouldn't testify [--] you've had an adequate amount of time to discuss who should and shouldn't testify with your attorneys[?]

THE DEFENDANT:  Yes, Your Honor.

THE COURT: Do you feel like you need to talk about that with your attorneys any further about who should testify?

THE DEFENDANT:  No, Your Honor.

THE COURT: Okay. And you – you're satisfied with just the two witnesses testifying on your behalf and that's it?

THE DEFENDANT:  Yes, Your Honor.

THE COURT: Is there – up to this point – also I don't know if there – is there going to be any defense evidence entered?

[TRIAL COUNSEL]: No[,] sir. I – no, sir. There's not.

THE COURT: And no other items of evidence?

39

[TRIAL COUNSEL]: No, sir.

THE COURT: Okay. It's my understanding as well from your attorney as you've just heard her state in open court that there will be no further evidence, you know, documents or photos or anything else entered into evidence during your case in chief. Is that your understanding as well?

THE DEFENDANT: Yes, sir.

THE COURT: And you're aware of any other evidence that could be presented to – to the jury that hasn't already been presented?

THE DEFENDANT: No, Your Honor.

THE COURT: Okay. So you're – you're satisfied with the two witnesses and no further evidence being presented on your behalf during your case in chief?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Is there – at this point is there anything you feel your attorneys should have done in your case that they haven't done?

THE DEFENDANT: No, Your Honor.

THE COURT: Is there anything you feel your attorneys did not do up to this point that they should have done?

THE DEFENDANT: No, Your Honor.

THE COURT: In other words, you're – are you – well, let me ask it this way: are you satisfied with your attorneys' representation in this case up to this point?

40

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. I'm -- I'm satisfied as well that the defendant has consulted with his attorney on these issues and has had an adequate amount of time to do this, was given time yesterday. Court recessed early to allow him more time to think about this and discuss these issues about him testifying and other witnesses testifying and I -- I believe that he has made the decision not to testify freely and voluntarily with the belief that it is in his best interest.

Later, the trial court conducted a follow-up inquiry with Defendant to confirm that his decision about testifying had not changed:

THE COURT: Okay. So outside of that there's no other witnesses that you feel should be testifying?

THE DEFENDANT: No, Your Honor.

The trial court's extensive colloquy with Defendant ensured that Defendant fully understood his right to testify. Defendant swore the decision to not testify was his alone. See Jones v. Barnes, 463 U.S. 745, 751 (1983) ("[T]he accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal . . . ."). Indeed, the trial court specifically cautioned Defendant that while he should confer with his attorneys, Defendant ultimately had to make the decision about whether testifying would be in his best interest. Furthermore, Defendant swore that no one threatened or coerced him into making his decision and that his attorneys did not guarantee that he would receive a better trial outcome by not testifying. He also

swore that there were no additional witnesses he wished to call or evidence that he wished to present.

Accepting the allegations contained in Ground Three of Defendant's motion requires discounting his sworn assertions to the trial court. Defendant may not obtain postconviction relief in that manner. See Kelley v. State, 109 So. 3d 811, 812-13 (Fla. 1st DCA 2013) ("A rule 3.850 motion cannot be used to go behind representations the defendant made to the trial court, and the court may summarily deny post-conviction claims that are refuted by such representations."); Henry v. State, 920 So. 2d 1245, 1246 (Fla. 5th DCA 2006) ("Defendants are bound by the statements made by them under oath . . . ."). Finally, the trial court's charge to the jury ensured that, contrary [to] what Defendant alleges in his motion, the jurors did not hold Defendant's decision not to testify against him:

> The Constitution requires the State to prove its accusations against the defendant. It is not necessary for the defendant to disprove anything nor is the defendant required to prove his innocence. It is up to the State – to the State to prove the defendant's guilty by the evidence.
>
> The defendant exercised a fundamental right by choosing not to be a witness in this case. You must not view this as an admission of guilt or be influenced in any way by his decision. No juror should ever be concerned that the defendant did or did not take the witness stand to give testimony in this case.

See also R.J. Reynolds Tobacco Co. v. Thomas, 264 So. 3d 199, 202 (Fla. 4th DCA 2019) ("Moreover, it is a well-established presumption that a jury would have properly followed a trial court's instructions.").

Accordingly, the Court denies Ground Three of Defendant's motion.

42

Doc. 20-15 at 6–11 (internal record citations omitted). Cameron clarified in his Initial Brief that the basis of this claim was that "the fact of and details" of his felony record would be elicited. Doc. 20-16 at 12. The First DCA per curiam affirmed the postconviction court's denial without a written opinion. Doc. 20-18.

Respondent makes the same argument that Cameron failed to exhaust the federal nature of this claim by failing to reference the Sixth Amendment or cite case law to that effect. However, for the reasons discussed in Ground Four, the Court declines to find the claim unexhausted on that basis.

To the extent that the First DCA decided this claim on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts considering the evidence presented in the state court proceedings. Therefore, Cameron is not entitled to relief on the basis of this claim.

This claim would similarly fail on the merits even assuming the state court's adjudication was not entitled to deference. In Florida, if a defendant

43

testifies, the prosecutor may ask if he has been convicted of a felony, and if so, how many. Lawhorne v. State, 500 So. 2d 519, 522 (Fla. 1986). However, the prosecutor is prohibited from asking about the nature of the felonies unless the defendant opens the door to that line of questioning. See Jones v. Sec'y Dept. of Corr., 487 F. App'x 563, 568 (2012). Thus, only if counsel advised Cameron that the nature of his prior felony convictions would be elicited if he testified, would trial counsel's advice been a misstatement of the law.

As a preliminary matter, the Court rejects Cameron's argument that any advice not to testify "lacked any logical basis" because he and the prosecution had entered into a stipulation that he was a convicted felon. Amended Petition at 16. The stipulation regarding Cameron's prior criminal history only informed the jury that Cameron "had been convicted of a felony and or was a convicted felon on or before February 6, 2016." Doc. 20-6 at 206. Importantly, this stipulation was only read to the jury after the jury returned its verdict finding Cameron guilty of second degree murder, see Doc. 20-6 at 203, and only to be considered regarding the severed possession of a firearm charge. Additionally, the stipulation did not specify the number of times Cameron had been convicted of a felony. See id. at 206. Thus, there was still significant potential prejudice if Cameron had testified because the jury would have learned, prior to deciding the murder charge, both that Cameron was a convicted felon and the number of times he had been convicted of a felony. And,

44

the trial judge instructed the jury that they could use that information in assessing his credibility had he testified. See Doc. 20-6 at 169–70.

Assuming counsel did misadvise Cameron that the details of his felonies would be introduced, the Court still finds no prejudice. Cameron states that if he had testified, he would have testified regarding his long friendship with the victim and that they had even been at a barbeque together the day after the threat testified to by the victim's father and prior to the shooting. But that testimony would have been cumulative to the evidence presented. The victim's father testified that Cameron and the victim were friends, that the victim would go to Cameron's house at least two to three times a week, Cameron would go to the victim's home as well, and that Cameron would buy the victim gifts. Doc. 20-5 at 158–60, 195, 206. The victim's father also testified that the friendship had been ongoing for five to seven years at the time of the incident. Id. at 195–96. Moreover, Cameron presented two witnesses in his case, one of whom testified regarding Cameron's friendship with the victim and both of whom testified that the victim had been at the barbeque with Cameron the day before the shooting. Doc. 20-6 at 15–17, 21, 24, 25–29, 33–38.

Cameron also asserts he would have testified that he was not simply looking for a safety but was focused on determining how to lower the gun's hammer without discharging the firearm and he would have clarified that the actual trigger force was four-and-a-half pounds rather than the thirteen

45

pounds of pressure as the State argued. Cameron does not profess to being a firearms expert (instead the case centers around him trying to determine basic functionality of the gun) and would not have been able to testify regarding the trigger force necessary for that firearm to discharge. Moreover, to testify that he was doing more than merely trying to find the gun's safety would risk the jury finding his testimony inconsistent with his prior statements that the reason the victim had come over was to help locate the safety.

In his Reply, Cameron also states he was prepared to testify that he "had never threatened any harm to the victim, and certainly had not stated that he would 'kill' his friend." Reply at 4. However, Cameron never mentioned this proposed testimony in Rule 3.850 Motion or Amended Petition. Thus, the Court need not address that argument. See Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'" (citing United States v. Coy, 19 F.3d 629, 632 n.7 (11th Cir. 1994))). Considering the evidence presented by the State in this case, and the minimal positive effect of his proposed testimony, the Court finds no reasonable probability the result of the proceeding would have been different had Cameron chosen to testify. Accordingly, Cameron is not entitled to federal habeas relief on this claim.

46

## F. Ground Six

Last, Cameron contends that he was denied a fair trial based on the cumulative effect of counsel's errors in failing to: (1) adequately cross-examine the expert testimony of the medical examiner; (2) move to strike a juror who worked with the victim's "close relative"; and (3) move for a mistrial based on the emotional outburst from the victim's family in front of the jury. Amended Petition at 18–21. Cameron raised a substantially similar cumulative error argument in claim seven of his Rule 3.850 Motion. Doc. 20-14 at 21. The postconviction court denied relief, stating in pertinent part:

> In Ground Seven, Defendant makes a claim of cumulative error. "Claims of cumulative error do not warrant relief where each individual claim of error is either meritless, procedurally barred, or does not meet the Strickland standard for ineffective assistance of counsel." Schoenwetter v. State, 46 So. 3d 535, 562 (Fla. 2010) (internal quotation omitted). Because Defendant's claims do not meet Strickland's standard for ineffective assistance of counsel, Defendant's claim of cumulative error does not warrant relief. Accordingly, the Court denies Ground Seven of Defendant's motion.

Doc. 20-15 at 16. The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 20-18.

To the extent that the appellate court decided Cameron's claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of

47

the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Cameron is not entitled to relief on the basis of the claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Cameron's claim does not have merit. Where all individual claims are meritless, the claim of cumulative error is also without merit. Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012); see United States v. Taylor, 417 F.3d 1176, 1182 (11th Cir. 2005) ("There being no error in any of the district court's rulings, the argument that cumulative trial error requires that this Court reverse [the defendant's] convictions is without merit."). The Court has reviewed the record and finds that the record does not show, nor has Cameron identified, any error in the trial court's determinations regarding the lack of merit for each individual claim. Therefore, Cameron's assertion of cumulative error is likewise without merit. Accordingly, Cameron is not entitled to federal habeas relief on Ground Six.

48

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Cameron seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Cameron "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon

49

consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Amended Petition (Doc. 15) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.      If Cameron appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of February, 2026.

MARCIA MORALES HOWARD
United States District Judge

50

JaxP-12
c:      Frank Antonio Cameron, #916711
        Counsel of Record